IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY WHITE,<br><br>            Plaintiff,<br><br>     v.<br><br>L. NGUYEN, et al.,<br><br>            Defendants. | Case No.: 1:10-cv-01466-AWI-JLT (PC)<br><br>FINDINGS AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 33) |

   Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. In this litigation, Plaintiff claims that an abscess—caused by the Valley Fever bacteria--that grew on his lip was improperly treated and then, once it was surgically removed, he was improperly denied pain medication. This lawsuit proceeds against Doctors Nguyen and Duenas.[1]

   Now pending before the Court, is Defendant's motion for summary judgment. (Doc. 33) For the reasons set forth below, the Court recommends Defendant's motion for summary judgment be **GRANTED**.

---

[1] Defendants request that summary judgment be granted as to Defendant Amadi as well. Dr. Amadi was dismissed from this litigation after extensive efforts to serve her failed. However, after this occurred, Dr. Amadi returned a waiver of service form. Nevertheless, Plaintiff has not taken steps to revive the lawsuit as to Dr. Amadi.

I.     **Allegations of the First Amended Complaint**

In his First Amended Complaint, Plaintiff asserted that Dr. Duenas and Dr. Nguyen saw him in the early part of 2009 and failed to provide him treatment for a growth on his lip. (Doc. 10 at 2-3) He claimed also that on January 22 and 23, 2009, test results determined Plaintiff suffered from Valley Fever which caused the large growth. Id. at 2. Plaintiff was transferred to Mercy Hospital for treatment of his Valley Fever. Id. at 3. Plaintiff underwent surgery and the growth was removed. Plaintiff alleged also that upon his discharge from Mercy Hospital, he was prescribed tramadol for pain. Id. at 3. However, when he returned to the prison, Dr. Duenas saw him and, though he alerted her of the need for pain medication, she failed to prescribe any. Id. at 4.

Plaintiff alleged that he saw Dr. Nguyen on May 20, 2009 and told him that he was in significant pain. Doc. 10 at 4. However, Dr. Nguyen failed to prescribe medication. Id. Once again, on June 3, 2009 and June 10, 2009, Plaintiff saw Dr. Nguyen who failed to prescribe pain medication despite being told by Plaintiff that he was in severe pain. Id. It was not until July 2009, that Plaintiff claimed that he began receiving pain medication. Id. Finally, Plaintiff alleged that after his surgery to remove the growth, he was left disfigured which interferes with his ability to drink, eat and talk. Id. at 3.

II.    **Statement of Facts**

In 2009, Plaintiff was housed at Pleasant Valley State Prison. Fact 2. On January 7, 2009, Plaintiff requested medical attention for what he believed was a "bug bite." Fact 13. He was seen that same day by a nurse who took a culture of the abscess on Plaintiff's lip. Facts 14, 15. The nurse prescribed a warm compress and Bactrim, which is a medication which eliminates bacteria which cause skin infections. Id. This treatment is typical for abscesses. Fact. 12.

On January 13, 2009, Plaintiff was seen in the medical clinic again and the abscess on Plaintiff's lip had grown in size. Fact 15. At the earlier appointment, Plaintiff denied having fever or chills. Fact 14. Now Plaintiff complained of a cough, weight loss and night sweats. Fact 15. These symptoms are consistent with Valley Fever, a fungal infection. The doctor ordered a biopsy of the abscess and prescribed fluconazole, multivitamins and vitamin C. Id. This

treatment is typical for a form of Valley fever called disseminated coccidioidomycosis. Facts 9, 11. Fluconazole is a medication used to treat fungal infections, notably Valley Fever. Doc. 33-3 at 11, 16.

Again on January 28, 2009, Plaintiff was seen in the clinic by Dr. Amadi. Fact 17. Plaintiff complained of weight loss but denied reduced appetite, abdominal pain and bloody or black stools. Id. Dr. Amadi prescribed Plaintiff a triple antibiotic ointment and pain medication. Id. In addition, she ordered that Plaintiff's weight be monitored by nursing staff and called the laboratory to check the results of the Valley Fever test, submitted on January 13, 2009. Id. The lab result was not available. (Doc. 33-3 at 8 ["the results were still pending."])

On February 3, 2009, Plaintiff submitted a health care request and indicating that the lip injury, which had started to heal, now was bigger than ever. Fact 18. He was seen in the clinic on February 6, 2009 and, because the lab result was still not available, the doctor ordered Plaintiff be transferred to Mercy Hospital to rule out Valley Fever. Fact 19. At that time, Plaintiff was well-nourished, in no acute distress and denied chills, nausea, vomiting, fever, nose discharge and respiratory symptoms. Fact 20. Doctors at Mercy Hospital performed a biopsy and determined Plaintiff suffered from disseminated Valley Fever. Fact 21.

On March 6, 2009, Dr. Suesberry performed surgery to remove the lesion from Plaintiff's lip. Fact 22; Doc. 33-3 at 60. Plaintiff remained at Mercy Hospital an additional two months and was discharged on May 9, 2009. Fact 23. Upon discharge, he was ordered to continue fluconazole and to follow-up with the surgeon and Dr. Mui, who was an infectious disease consultant. Fact 23; Doc. 33-3 at 58. The discharge orders read, "The patient was discharged back to the prison to continue to take Diflucan 600 mg every day and follow up with Dr. Mui in internal medicine and follow up with Dr. Suesberry as outpatient for continued care." (Doc. 33-3 at 58) Upon discharge from the hospital, Plaintiff was not ordered to receive pain medication although some, including Ultram (tramadol), were listed under the heading of "Additional Medications & Suggestions." Doc. 33-3 at 53.

When he arrived at the prison clinic on May 9, 2009, Plaintiff reported that he was "alright." Fact 24. Dr. Diep was on call and via telephone, he ordered that Plaintiff be seen in the

1  clinic in five days, follow-up with Dr. Suesberry in one-to-two weeks and with Dr. Mui in a
2  month.  Id.; Doc. 33-3 at 17.  The following Monday, on May 11, 2009, Dr. Duenas co-signed Dr.
3  Diep's telephonic orders because he was not available to do so.  Fact 25.  This allowed Plaintiff's
4  treatment to be expedited.  Id.  As a result, on this date, Plaintiff was prescribed fluconazole and
5  gabapentin, which is a pain medication.  Id.; Doc. 33-3 at 10; Doc. 33-4 at 55.  He began
6  receiving the medications, including the gabapentin the next day.  Doc. 33-4 at 55, 58.

7        On May 20, 2009, Dr. Nguyen saw Plaintiff for the first time.  Fact 27. By this time,
8  Plaintiff's lip had "healed well."  Doc. 33-4 at 65.  Dr. Nguyen refilled the fluconazole,
9  prescribed tramadol and doubled the dosage of the pain medication, gabapentin, due to Plaintiff's
10 complaints of pain.  Id.  In addition, he ordered a lab test to check for the ongoing presence of
11 Valley Fever and submitted a request that Plaintiff be seen by Dr. Suesberry.  Id.

12       On June 3, 2009, after seeing Dr. Suesberry, Dr. Nguyen saw Plaintiff who was again
13 complaining of pain.  Fact 29.  Dr. Nguyen ordered Plaintiff to continue with the pain medication
14 regimen ordered previously and contacted the clinic and confirmed that Plaintiff's prescription of
15 tramadol had been ordered but had not yet been received.  Id.; Doc. 33-8 at 10.  On June 9, 2009,
16 Plaintiff's prescriptions were refilled and the next day, Plaintiff underwent the blood test Dr.
17 Nguyen had ordered on June 3.  Fact 30.  On June 12, 2009, Plaintiff's prescription for tramadol
18 was filled.  Fact 31.

19       In mid-July, Dr. Nguyen again saw Plaintiff, at which time he refilled Plaintiff's
20 prescriptions and referred him to a plastic surgeon.  Fact 32. However, when the appointment was
21 scheduled to occur, Plaintiff refused to attend the follow-up appointment with the plastic surgeon
22 because he was suffering from "slight" back pain at the time.  (Doc. 33-3 at 12; Doc. 43 at 4-5)

23       On July 29, 2009, Dr. Mui requested Plaintiff have a spinal tap to determine whether the
24 Valley Fever had infiltrated his spinal column such to cause the headaches about which Plaintiff
25 complained.  Fact. 34.  To expedite this request, on this same date, Dr. Duenas signed Dr. Mui's
26 request so that Plaintiff could have the procedure as soon as possible.  Id.; Doc. 33-5 at 17.

27       On August 5, 2009, Dr. Nguyen refilled the fluconazole prescription.  Fact 35.  However,
28 he discontinued Plaintiff's prescription for tramadol and substituted morphine to address

1 Plaintiff's complaints of pain in his back and knees.  Id.  On August 10, 2009, the results of the
2 spinal tap demonstrated that Plaintiff did not have the Valley Fever fungus in his spine and his
3 Valley Fever had improved.  Fact 37.

### III.    LEGAL STANDARD

#### A.    Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  Id. (citing Celotex, 477 U.S. at 323).

If the moving party has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor."  FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment.  Stefanchik, 559 F.3d at 929.

1   Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
2   nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith
3   Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

4   In resolving a summary judgment motion, "the court does not make credibility
5   determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the
6   evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn
7   in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric
8   Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out
9   of the air; it is the nonmoving party's obligation to produce a factual predicate from which the
10  inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-
11  45 (E.D. Cal. 1985).

12  The court must apply standards consistent with Federal Rule of Civil Procedure 56 to
13  determine whether the moving party has demonstrated that there is no genuine issue of material
14  fact and judgment is appropriate as a matter of law. Henry v. Gill Indus., Inc., 983 F.2d 943, 950
15  (9th Cir. 1993). In resolving a motion for summary judgment, the Court examines the evidence
16  provided by the parties, including pleadings depositions, answer to interrogatories, and
17  admissions on file. *See* Fed. R. Civ. P. 56(c).

18  **B.      Plaintiff has failed to demonstrate a violation of the Eighth Amendment**

19  The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized
20  standards, humanity, and decency.' " Estelle v. Gamble, 429 U.S. 97, 102 (1976), quoting
21  Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.1976). Included in the prohibition of cruel and
22  unusual punishments is a responsibility placed upon prison officials to provide medical care to
23  prisoners. Id. at 104–05. To claims arise in the context of inadequate medical care, a prisoner
24  must point to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious
25  medical needs." Id. at 106. In the Ninth Circuit, a cognizable claim has two elements: "the
26  seriousness of the prisoner's medical need and the nature of defendant's response to that need."
27  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991), overruled on other grounds by WMX
28

Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997); see also Jett v. Penner, 429 F.3d 1091, 1096 (9th Cir.2006).

### 1. The Court finds Plaintiff suffered from a serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059, quoting Estelle, 429 U.S. at 104. Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059–60, citing Wood v. Housewright, 900 F.2d 1332, 1337–41 (9th Cir.1990).

It does not appear that Defendants challenge, at least in this motion, that Plaintiff suffered from a serious medical condition. Thus, the Court finds, Plaintiff suffered from a serious medical need.

### 2. Deliberate indifference

Assuming Plaintiff had a serious medical condition at the time of the events raised in the complaint, Plaintiff still must establish Defendants responded to that need with deliberate indifference. Farmer, 511 U.S. at 834. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 291 F.3d 1051, 1060 (9th Cir.2004). A defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." Gibson, 290 F.3d at 1193 (emphasis omitted); Farmer, 511 U.S. at 837. Where a defendant should have been aware of the risk of substantial harm but was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." Id. at 1188.

Generally, deliberate indifference to serious medical needs of prisoners may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 393–94 (9th Cir.1988). Delays in providing medical treatment may manifest deliberate indifference. Estelle, 429. U.S. at 104–05. However, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference."

Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985). In addition to the delay in surgery or treatment, a plaintiff must show harm arose as a result of the delay, such as further medical complications attributable to the delay or pain and suffering. Scott v. Keller, 2010 U.S. Dist. LEXIS 95738, at * 12 (E.D.Cal. Sept. 14, 2010); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (per curium).

### a. Dr. Duenas

Despite Plaintiff's contentions, the evidence shows that Dr. Duenas did not treat him either on May 9, 2009 or July 29, 2009. Facts 25, 34. Dr. Duenas has made clear that she merely signed the medical orders on these dates so expedite Plaintiff's treatment. (Doc. 33-3 at 17) Indeed, the chart supports this. On May 9, 2009, RN Roberson wrote the entry. (Doc. 33-3 at 52-53)

However, Plaintiff argues that the May 9, 2009 document, which has Dr. Duena's signature on it, proves that he saw this doctor on this date. However, Dr. Duenas has explained why her signature appears on the document despite that she did not see him and Plaintiff fails to counter this with any evidence. For example, he does not attest how he knows he saw Dr. Duenas on May 9, 2009, i.e., that he saw the doctor and she wore a nameplate that read, "Dr. Duenas," nurses referred to the doctor as "Dr. Duenas" or that he knows Dr. Duenas from past contact, etc. Thus, it appears that Plaintiff is basing his claims of liability only on the fact that Dr. Duenas signed these orders.

In any event, even if he saw Dr. Duenas on May 9, 2009, the records make clear that Plaintiff *was* prescribed gabapentin on May 9, 2009 and began receiving this pain medication on May 12, 2009. Fact 25; Doc. 33-3 at 10; Doc. 33-4 at 55; Doc. 33-4 at 69. Though he claims that he did not receive pain medication, it is clear that what he means is that he did not receive the tramadol that he received while in the hospital. In fact, when confronted with the fact that he had been receiving pain medication in response to his grievance, Plaintiff indicated he was, "Dissatisfied, for the purposes of not receiving the proper treatment. *I have yet to receive the medication to subside the pain . . .*" (Doc. 33-5 at 25) However, the fact that he preferred the tramadol or that he felt that it was more effective than the pain medication provided, does not

1 demonstrate a violation of the Eighth Amendment. <u>Franklin v. State of Or., State Welfare Div.</u>,
2 662 F.2d 1337, 1344 (9th Cir.1981) ("A difference of opinion between a prisoner-patient and
3 prison medical authorities regarding treatment does not give rise to a [section] 1983 claim.").

4 On the other hand, though Plaintiff is insistent that the hospital doctors prescribed him
5 tramadol, the discharge summary belies this claim. The only medication the hospital doctor
6 ordered Plaintiff to receive was fluconazole. Doc. 33-3 at 53. The discharge orders read, "The
7 patient was discharged back to the prison to continue to take Diflucan [fluconzzole] 600 mg every
8 day and follow up with Dr. Mui in internal medicine and follow up with Dr. Suesberry as
9 outpatient for continued care." Doc. 33-3 at 58. Moreover, the discharge summary lists other
10 medications including Ultram (tramadol), but *only* under the heading of "Additional Medications
11 & Suggestions." Doc. 33-3 at 53. The fact that the prison doctors chose a different treatment
12 option is not sufficient to demonstrate an Eighth Amendment violation. Instead, Plaintiff must
13 demonstrate "that the chosen course of treatment 'was medically unacceptable under the
14 circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's]
15 health.'" <u>Toguchi</u>, 391 F.3d at 1058. Here, Dr. Nguyen asserts that in his medical opinions, the
16 use of the gabapentin can be "quite effective in treating pain." (Doc. 33-3 at 10) Dr. Nguyen
17 asserts that throughout the time he treated Plaintiff, he provided "medically appropriate
18 medication." <u>Id.</u> at 12. Likewise, Dr. Duenas indicates she has reviewed Plaintiff's medical chart
19 and, in her opinion, he received "appropriate treatment" both before his admission to the hospital
20 and after he was returned to the prison. (Doc. 33-3 at 18.) Though Plaintiff claims that the
21 tramadol was superior and, even if he is right, he has failed to provide any evidence that the use
22 of the gabapentin was medically unacceptable.

23 Finally, Plaintiff does not now contend that Dr. Duenas saw him in January and, indeed,
24 the evidence disputes this. (Doc. 33-3 at 8, 16, 35-39) Thus, the Court recommends the motion
25 for summary judgment as to Dr. Duenas be **GRANTED**.

26       **b.  Dr. Nguyen**
27 The evidence demonstrates that Dr. Nguyen did not see Plaintiff until May 20, 2009—11
28

days after he returned to the prison after being discharged from the hospital.[2] (Doc. 33-3 at 8, 16, 35-39) At that time, Dr. Nguyen ordered his medications continued though he doubled the dosage of the pain medication. (Doc. 33-4 at 69) In addition, he prescribed tramadol to be added to those Plaintiff was taking. (Doc. 33-3 at 8)

On June 3, 2009, Dr. Nguyen saw Plaintiff again who reported that he had not received the tramadol. (Doc. 33-3 at 10) Dr. Nguyen called the clinic to find out why and was told that the medication had been ordered but had not yet been received at the prison pharmacy. Id. The tramadol was finally received by the prison and given to Plaintiff on June 13, 2009. Id. at 11; Doc. 33-4 at 89.

On July 10, 2009, Dr. Nguyen saw Plaintiff and refilled his prescriptions. (Doc. 33-3 at 10; Doc. 33-5 at 2-3) In addition, he ordered Plaintiff to be seen by a plastic surgeon as Dr. Suesberry had recommended. Id. Plaintiff refused to see the plastic surgeon as scheduled on August 18, 2009 because he was "feeling *slight* pain from last week's spinal tap." (Doc. 33-3 at 12; Doc. 33-6 at 5, emphasis added) On August 5, 2009, Plaintiff complained to Dr. Nguyen that he was having pain in his knees and back. (Doc. 33-3 at 11) Thus, Dr. Nguyen replaced the tramadol with morphine in order to better control the pain and, otherwise, refilled Plaintiff's prescriptions. Id.

Notably, from the first visit, Dr. Nguyen prescribed the tramadol that Plaintiff now claims was constitutional error not to provide him. (Doc. 33-4 at 65) When the medication was not given to Plaintiff despite his order for it, Dr. Nguyen contacted the pharmacy and learned that the medication had been ordered but had not yet been received by the prison. (Doc. 33-3 at 10) Rather than displaying deliberate indifference to Plaintiff's condition, this demonstrates that Dr. Nguyen was concerned and took steps to address this concern. However, exactly what Dr. Nguyen was supposed to do, given there was no tramadol at the facility to give Plaintiff, is not explained by Plaintiff. Nevertheless, to account for this lack of tramadol, Dr. Nguyen doubled the dosage of the pain medication, gabapentin, and the records demonstrate that, in fact, Plaintiff

---

[2] Once again, it does not appear that Plaintiff now disputes this.

received this doubled dose. (Doc. 33-4 at 55, 69) Notably, in his opposition to the motion, Plaintiff fails to address this evidence demonstrating that he *was* receiving pain medication, though not the tramadol.

In addition, despite Plaintiff's complaints that his lip was deformed due to the surgery to remove the abscess, Dr. Nguyen ordered Plaintiff to be referred to a plastic surgeon to investigate revising the scar. However, because Plaintiff was suffering "slight" pain in his back *he chose* not to attend the consultation. (Doc. 33-3 at 12; Doc. 33-6 at 5) He has no one to blame for missing this appointment except himself and other than forcing Plaintiff to attend the appointment—which he could not do--there was nothing Dr. Nguyen could do to ensure Plaintiff was seen by the plastic surgeon.

Because there is no evidence that Dr. Nguyen was deliberately indifferent to Plaintiff's medical condition, the Court recommends Defendants' motion for summary judgment be **GRANTED**.

### III.     Findings and Recommendation

For the reasons set forth above, the Court concludes that Defendants are entitled to summary judgment and recommends that the motion (Doc. 33) be **GRANTED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 11, 2012**                              **/s/ Jennifer L. Thurston**
                                                                              UNITED STATES MAGISTRATE JUDGE